IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | 2:05cr146-A |
| | ) | |
| WILLIAM KENT SALTER | ) | |

## MOTION TO SUPPRESS

**COMES NOW** the defendant, William Kent Salter, by undersigned counsel and pursuant to Rule 12 of the Federal Rules of Criminal Procedure, and respectfully moves this Court to suppress all items seized and statements obtained as a result of a police stop and search of the car driven by Mr. Salter on August 8, 2004, on Airbase Boulevard in Montgomery, Alabama, in the Middle District of Alabama.

As grounds for this motion, Mr. Salter would show that such search and seizure violated his right to be free from unreasonable searches and seizures under the Fourth Amendment to the U.S. Constitution, and that any such statements obtained violated his right not to incriminate himself, under the Fifth Amendment to the U.S. Constitution.

## ISSUES PRESENTED

1.    Whether Mr. Salters was unlawfully detained when police officers from the Montgomery Police Department initiated a traffic stop on August 8, 2004?

2.    If Mr. Salters was unlawfully detained, whether all evidence obtained as a

result of that unlawful detention should be suppressed?

## **PROPOSED FINDINGS OF FACT**

3.     On the evening of August 8, 2004, Mr. Salter parked his car, a red 1994 Ford Tempo, near the end of Hayneville Rd in Montgomery, AL, where he got out of his car for a brief period of time. As he returned to his car he was approached by two uniformed Montgomery Police Department police officers who had parked their patrol car nearby.

4.     The officers asked Mr. Salter his name and what he was doing there. Mr. Salter told the officers his name and explained that he was looking for someone who worked nearby. The officers seemed satisfied with this response. The officers left the area in their car, and Mr. Salter left the area in his car.

5.     No more than 30 minutes later Mr. Salter was driving his car near the 1000 block of Airbase Blvd. The same officers from the earlier encounter on Hayneville Rd pulled up behind Mr. Salter's car and initiated a traffic stop.

6.     After pulling his car over to the side of the road, Mr. Salter started to get out of the car. One of the officers instructed Mr. Salter to remain in the car. Mr. Salter did so, leaving his driver's-side door open.

7.     As the officers approached Mr. Salter's car one of them asked for Mr. Salters' driver's license, and the other told him the license plate on his car didn't match his car. Mr. Salter explained to the officers that he had recently purchased the Ford Tempo he was driving

and that he had taken the license plate on his car from another vehicle that he owned. At this point the officers asked him to step out of the car. They escorted Mr. Salter to the rear of his car, where they placed him in handcuffs. At this time they did not tell Mr. Salter why they placed him in handcuffs.

8. The officers asked if he had any weapons on him. He responded that he had two knives in his pockets. The officers seized the knives that Mr. Salter had in his pockets. The officers then placed Mr. Salter in the rear of their patrol car.

9. While Mr. Salter sat in the patrol car the officers searched the interior of Mr. Salters' car. After a few minutes the officers returned to the patrol car. They told Mr. Salter that they had found a bag of marijuana in his car and that he was under arrest for possession of marijuana.

10. The officers next asked Mr. Salter if he had any weapons in his car. Mr. Salter told the officers that he had a gun in a bag in the floorboard of the car, and may have a second gun in the car as well. The officers returned to Mr. Salters' car, searched it again and found two guns in the car. The officers seized the guns.

11. The officers drove Mr. Salter to the police station, where he was interrogated by Detective J. M. Dinunzio

## LAW

12. The Fourth Amendment to the United States Constitution guarantees "the right

of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Amend IV.  Before police officers may stop a car, the officers must have a reasonable suspicion that a traffic violation has occurred or that criminal activity is in progress.  See, *Whren v. United States*, 517 U.S. 806, 809 (1996); *Terry v. Ohio*, 392 U.S. 1 (1967).  While not all police-citizen encounters trigger Fourth Amendment scrutiny, a traffic stop is a limited seizure within the meaning of the Fourth Amendment, and it is analogous to an investigative detention.  *United States v. Perkins*, 348 F. 3d 965, 969 (11th Cir. 2003).

13.     "Under *Terry* an officer's actions during a traffic stop must be reasonably related in *scope* to the circumstances which justified the interference in the first place.  Furthermore, the *duration* of the stop must be limited to the time necessary to effectuate the purpose of the stop.  The traffic stop may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity."  *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (citations omitted; emphasis original).

14.     Generally, upon issuing the citation or warning and determining the validity of the driver's license and right to operate the vehicle, the officer usually must allow the driver to proceed without further delay or additional questioning.  *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999).  A longer detention for additional questioning is permissible under two circumstances:  (1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring; or (2) the initial

detention changes to a consensual encounter. *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998). "If, however, the officer continues to question the driver in the absence of either of these two circumstances, then 'any evidence derived from that questioning (or a resulting search) is impermissibly tainted in Fourth Amendment terms.'" *United States v. Elliott*, 107 F.3d 810, 813 (10th Cir. 1997) (quoting *United States v. Sandoval*, 29F.3d 537, 540 (10th Cir. 1994)).

15.    The law of arrest is also relevant to determining whether a continued detention is unreasonable. An arrest occurs when a law enforcement officer takes some action, by physical force or show of authority, resulting in the type of seizure which would induce a reasonable person to believe that he is not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). An arrest is constitutionally valid, if "at the moment an arrest was made, the officers had probable cause to make it." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

16.    However, detention based on an "unparticularized" or "unsupported" hunch violates the Fourth Amendment. *U.S. v. Perkins*, 348 F.3d 965, 972 (11th Cir. 2003); *U.S. v. Pruitt*, 174 F.3d 1215, 1221 (11th Cir. 1999).

17.    The exclusionary rule principally serves "to deter future unlawful police conduct." *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). "[T]he rule is a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect . . ." Id. at 348, 94 S.Ct. at 620. Thus, the rule must be applied in light of its deterrent purpose. "Under this rule, evidence obtained in violation of

the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure. *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 1081 (1961). This prohibition applies as well to the fruits of the illegally seized evidence. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)." *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974).

## ANALYSIS

18.     When the police officers stopped Mr. Salter they informed him that they did so because the license plate on his car didn't match the car he was driving. There is no evidence to suggest that the officers believed that either the license plate or the car was stolen. When the officers stopped Mr. Salter's car they had no objectively reasonable and articulable suspicion that any other illegal activity had occurred; nor is there any evidence to suggest that the initial detention at any time changed to a consensual encounter. As a result, they should have issued Mr. Salter a citation and sent him on his way. This they did not do.

19.     Instead, the officers escorted Mr. Salter to the rear of his car, where they placed him in handcuffs, and subsequently placed him in the back seat of their patrol car. This was obviously a type of restraint that would induce a reasonable person to believe that he was not free to leave, and Mr. Salter did believe that he was not free to leave. Mr. Salter was, in fact,

under arrest at that time. However, it was only AFTER Mr. Salter was clearly under arrest that the officers searched his car, found the marijuana and then told Mr. Salter that he they were arresting him for possession of the marijuana.  Because the officers had no probable cause to arrest Mr. Salter at the time of the initial arrest, that arrest was constitutionally invalid.

20. After Mr. Salter was unlawfully detained and arrested, any evidence derived from the questions the officers asked Mr. Salter or from the search they conducted of his car is impermissibly tainted in Fourth Amendment terms.  Further, the statement that Mr. Salter provided to Detective Dinunzio when he was questioned at the police station is also tainted as "fruit of the poisonous tree."

21. Therefore, under the circumstances of this case, all the items seized from Mr. Salter and all the statements that Mr. Salter made, as well as all evidence obtained from or as the fruit of such seizures, must be suppressed.

**WHEREFORE**, the defendant respectfully prays that this Motion be granted.

Dated this 4th day of August 2005.

>     Respectfully submitted,
>
>     s/ Donnie W. Bethel
>     DONNIE W. BETHEL
>     Assistant Federal Defender
>     201 Monroe Street, Suite 407
>     Montgomery, Alabama 36104
>     Phone: (334) 834-2099
>     Fax: (334) 834-0353
>     E-mail:don_bethel@fd.org

IN Bar Code: 14773-49

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | 2:05cr146-A |
| | ) | |
| **WILLIAM KENT SALTER** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Kent Brunson, Esquire
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104

Respectfully submitted,

s/ Donnie W. Bethel
DONNIE W. BETHEL
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail:don_bethel@fd.org
IN Bar Code: 14773-49