IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR. NO.  2:05cr146-A |
| | ) | WO |
| WILLIAM KENT SALTER | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The defendant, William Kent Salter ("Salter"), was charged on July 1, 2005, in a single-count indictment with being a convicted felon in possession of a firearm[1] in violation of 18 U.S.C. § 922(g)(1).  On August 4, 2005, Salter filed a motion, premised upon the Fourth Amendment to the United States Constitution, to suppress "all items seized and statements obtained as a result of a police stop and search of a car driven by him on August 8, 2004, on Airbase Boulevard in Montgomery, Alabama, in the Middle District of Alabama."  (Doc. # 13 at 1).  Claiming that he was unlawfully detained when Montgomery City police officers initiated a  traffic stop, Salter argues that the stop and subsequent search of his vehicle were unsupported by probable cause.

On August 15, 2005, the Court held an evidentiary hearing on the suppression motion.  For the reasons which follow, the Court concludes that the motion to suppress is due to be denied.

---

[1]The indictment makes reference to only one pistol.  During the search of Salter's car, two pistols were found; however, one of them was inoperable.

# FACTS[2]

On August 8, 2004, Montgomery City police officers Gambrell and Smith responded to a business alarm call at the Kendall Baptist Church on Velma Circle. (Def's Ex. E). Arriving at the church, the officers determined that the alarm was false. Because they were close, the officers decided to proceed to Hayneville Road, a area known for prostitution and drug activity. There, they noticed that parked on the side of Hayneville Road was a red Ford Tempo. Salter, wearing black "BDUs," was standing beside the car.[3] Officer Gambrell assumed Salter was a county police officer because the clothing he wore is similar to that which narcotics officers, special operations officers, and strike force officers wear. Salter was also wearing a gold badge, a stun gun, and a holster on a utility belt. However, he had no name tag, insignia, or other paraphernalia that would have identified him as a Montgomery Police Officer. Gambrell asked Salter if he was an officer and whether he was okay.[4] Salter answered both questions affirmatively. Because nothing in this encounter initially alarmed Gambrell, he and Smith left.

However, Gambrell continued to think about the encounter and began to have "a bad feeling" about Salter. Gambrell told Smith that "something was not right" about Salter. A short while later, Gambrell realized that when Salter was outside his car, there

---

[2] Unsurprisingly, the facts about the stop and the sequence of events during the stop are disputed. The court will first relate the factual scenario which it finds to be correct and then explain the different version of the facts which the court does not accept.

[3] "BDU" is an acronym for Battlefield Dress Uniform.

[4] It is undisputed that Gambrell did not ask Salter whether he was a police officer.

2

was no gun in his holster. The empty holster made Gambrell suspicious, and he decided to try to find Salter. Within fifteen minutes, Gambrell located Salter driving the Tempo on Airbase Boulevard.

Gambrell pulled behind Salter on Airbase Boulevard, ran a check of the license tag on the Ford Tempo, and found that the tag was registered to a Honda. Gambrell also knew that a Ford Tempo, albeit a different color, was on a list of stolen vehicles.[5] Armed with this knowledge, Gambrell became "extremely suspicious" about both the driver and the car. Based on the improper tag, Gambrell initiated a traffic stop.

When Salter pulled over he yielded to the left instead of the right side of the roadway. This heightened Gambrell's suspicion because he believed that any law enforcement officer would know that a driver should yield to the right. As soon as his vehicle was stopped, Salter opened the driver's side door and started to get out of the car. As he approached Salter, Gambrell told him to remain seated in the car.[6] When Gambrell got close to the open door, he saw in the pocket of the car door a clear plastic bag which appeared to contain marijuana. Gambrell described this bag as being about the size of his "fist or maybe smaller." Ev. Hrg. Trans. at 10. When Salter realized Gambrell had seen the marijuana, he explained to Gambrell that he had confiscated the marijuana but had not

---

[5] It is undisputed that the Ford Tempo Salter was driving was not stolen.

[6] Gambrell testified that when "the cars came to a stop I jumped out of my patrol car and began to approach his car. He swung his door open as he was trying to come out as well, but I had gotten very close to him at this point . . ." Ev. Hrg. Trans. at 10.

yet turned it in.[7]

Unconvinced, Gambrell arrested Salter for possession of marijuana. Salter was handcuffed and placed in the patrol car. He was also asked whether there were any weapons in the car. Salter told Gambrell there were two guns under the passenger seat. Salter stated that although he had a permit for the guns, the permit was at home, and it was expired. Because Gambrell placed Salter under arrest, he impounded the car and conducted a search. The search uncovered the two handguns, handcuffs, duct tape, condoms, a black bag, a stun gun, a number of knives and a machete.

## DISCUSSION

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810 (1996); *see also*, *United States v. Pruitt,* 174 F.3d 1215, 1217, fn. 1 (11th Cir. 1999) ("We agree that, because Pena was speeding, and a traffic violation had thus occurred, probable cause existed for the stop.[8] Accordingly, the stop was reasonable for purposes of the Fourth Amendment and withstands review."). A police officer "may stop a vehicle when there is probable cause to believe that the driver is

---

[7] Although the testimony at the suppression hearing differed about when this statement was made, Salter admitted that he made this statement to Gambrell.

[8] Because the court concludes that the officer had probable cause to stop the vehicle, the court pretermits discussion of whether reasonable suspicion would have sufficed to support the traffic stop. *See United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) ("Because a routine traffic stop is only a limited form or seizure, it is more analogous to an investigative detention than a custodial arrest. . . . Therefore, we analyze the legality of these stops under the standard articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).") (citations in original omitted).

violating any one of the multitude of applicable traffic . . . regulations relating to the operation of motor vehicles." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990)).

In this case, Gambrell stopped the defendant's vehicle only after having probable cause to believe that the defendant had committed a traffic violation, specifically having an improper tag on his vehicle. Gambrell testified that when he ran the tag on the red Ford Tempo, the computer report indicated that the tag was issued to a rose-colored 1993 Honda Accord. The court concludes that a reasonable officer in Gambrell's position could have stopped the defendant's vehicle for having an improper tag, and, therefore, the officer was justified in stopping the defendant. *See also United States v. Johnson*, 2005 WL 1412117 *2 (11th Cir. 2005) (fact that driver was swerving was sufficient justification to stop vehicle to insure that driver was neither drunk or sleeping); *United States v. Harris*, 928 F.2d 1113, 1116-17 (11th Cir. 1991) (same).

Salter does not really contest the validity of the traffic stop. Rather, Salter contends as follows:

> When the officers stopped Mr. Salter's car they had no objectively reasonable and articulable suspicion that any other illegal activity had occurred; nor is there any evidence to suggest that the initial detention at any time changed to a consensual encounter. As a result, they should have issued Mr. Salter a citation and sent him on his way. This they did not to.
>
> 19.   Instead, the officers escorted Mr. Salter to the rear of his car, where they placed him in handcuffs, and subsequently placed him in the backseat of their patrol car. This was obviously a type of restraint that would induce a reasonable person to believe that he was not free to leave, and Mr. Salter did believe that he was not free to leave. Mr. Salter was, in

5

> fact, under arrest at that time. However, it was only AFTER Mr. Salter was clearly under arrest that the officers searched his car, found the marijuana and then told Mr. Salter that he (sic) they were arresting him for possession of the marijuana. Because the officers had no probable cause to arrest Mr. Salter at the time of the initial arrest, that arrest was constitutionally invalid.

Motion to Suppress, (doc. # 13), at 6-7.

Salter's contention defines the dispositive dispute which is the time when Gambrell discovered the marijuana. At the evidentiary hearing, Gambrell testified that after stopping and approaching Salter's car on the boulevard, he saw the marijuana in the pocket of the car door which Salter had opened. Under Gambrell's version of the facts, he had probable cause to arrest Salter at that time.

Salter's version is markedly different. He testified that when he noticed the patrol car behind him, he pulled over and parked his car. He opened the door of the car to step out, but Gambrell directed him to remain in the car. According to Salter, one of the officers then approached the passenger side of the car and asked him where he was going. Salter replied that he was going to work. The officers then told him to step out of and move to the back of his car. He sat on the bumper for five to ten seconds during which time the officers asked if he had any weapons on him. He informed them that he had two knives and a stun gun on him. The officers took these weapons and arrested him.[9] He was handcuffed and placed in the back seat of the patrol car. According to Salter, only after he

---

[9]Interestingly, under Salter's version of the facts the officers arrested him after he told them he was armed. There was no evidence presented to the court suggesting that Salter's possession of these items provided a basis for his arrest and Salter steadfastly contends there was no probable cause for his arrest under his version of the facts. Given the court's findings of fact, there is no need to delve into this issue.

was in custody did the officers search the car and find the marijuana. Then, one of the officers asked Salter if there was anything else in the car and also asked Salter about the marijuana. It was at that time that Salter told Gambrell that he had confiscated the marijuana and eight knives "from a guy at a job he was doing security work."

Given this state of the evidence, it is necessary for the court to determine who is telling the truth. If Salter's version is accepted, then the officers lacked probable cause to arrest him, and the subsequent search of the car was constitutionally impermissible. If Gambrell's version of the facts is accepted, Salter's motion to suppress should be denied.

In conducting this analysis, the court recognizes that it is improper to determine credibility based solely on the "status" of a witness. *United States v. Ramirez-Chilel,* 289 F.3d 744, 749 (11th Cir. 2002). Thus, neither Salter's status as a convicted felon[10] nor Gambrell's status as a police officer is determinative. Rather, the court must weigh the testimony of these two witnesses in light of all the facts, taking into account their interests, the consistencies or inconsistencies in their testimonies, and their demeanors on the stand. *Gallego v. United States*, 174 F.3d 1196, 1198 (11th Cir. 1999).

Salter's criminal history, however, as well as his obvious interest in the outcome of this case militates strongly against his veracity. The court has carefully considered the

---

[10] At this juncture, the defendant does not dispute that he is a convicted felon. The pretrial services report of which the court takes notice as a record of the court clearly indicates that the defendant was convicted of manslaughter on March 28, 1989. In addition, the pretrial services report shows felony convictions in 1996, 1998 and 2000 for violating ALA. CODE § 13A-11-72 which provides that "[n]o person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence shall own a pistol or have one in his or her possession or under his or her control." Under Alabama law, manslaughter is a crime of violence. *See Anderson v. State*, 886 So.2d 895 (Ala. Crim. App. 2003).

demeanor of Salter during his testimony and does not credit his testimony that the officers first arrested him and searched his car for several minutes before finding the marijuana. In addition, Salter testified that despite the fact that they conducted two searches of his car, the officers did not find the two pistols under the front passenger seat until he told them about the weapons. This testimony borders on the incredible unless the court would be willing to find that the officers were incompetent, a conclusion which the facts in this case do not support. After careful consideration of the demeanor of Salter, his criminal history, and the other *Gallegos* factors as set out above, the court concludes that Salter's testimony regarding when he was arrested and when the marijuana was found is not worthy of belief.

Based on the court's consideration of Gambrell's demeanor, his lack of direct interest in the outcome of this case and the nature of his testimony, the court credits Gambrell's testimony. In reaching this conclusion, the court is aware that Gambrell was drawn to find and check on Salter because of a suspicion which did not involve any evidence of illegal activity on the part of Salter. Nonetheless, a common sense approach to police work is a healthy part of an officer's discharge of his duty so long as he is careful to respect the rights of the citizens he is sworn to protect.[11] Thus, the court does not consider that Gambrell's suspicions about Salter adversely affect his credibility.

The court finds that the marijuana was visible in the pocket of the car door when

---

[11]Thus, Gambrell's intent in seeking out and stopping Salter is irrelevant for Fourth Amendment purposes. "[A]n officer's motive in making a traffic stop does not invalidate what is otherwise "objectively justifiable behavior" under the Fourth Amendment." The intent of the officer, actual or theoretical, is irrelevant to the determination of whether the traffic stop was valid. *See United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997).Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996).

Salter opened the door.[12]  Next, the court finds that Gambrell saw the marijuana as soon as he approached Salter after he opened the car door.  Based on the court's credibility determinations and the court's consequent findings of fact, the court concludes that the initial stop of the vehicle was permissible and that it ripened into probable cause to arrest Salter when Gambrell spotted the marijuana in plain view when Salter opened the car door.

The marijuana gave Gambrell probable cause to arrest Salter.  The subsequent search of Salter's car was incident to that arrest and constitutionally permissible.  *See Thornton v. United States*, -- U.S. --, 124 S.Ct. 2127 (2004); *New York v. Belton*, 453 U.S. 454 (1981) (Establishing a "bright-line" rule permitting an officer who has made a lawful custodial arrest of a car's occupant to search the car's passenger compartment as a contemporaneous incident of the arrest).  Consequently, the pistol upon which the indictment is based as well as any other evidence[13] should not be suppressed.

## CONCLUSION

Accordingly, for the reasons stated, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be DENIED.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **August 24, 2005**.  Any objections filed must specifically identify the findings in

---

[12] Although counsel implied that it was too dark for Gambrell to see what was in the door, Salter admitted that Gambrell would have been able to see the marijuana when he was standing next to the open car door.

[13] Salter also argues, ¶ 20, Motion To Suppress, that any statement he made during questioning at the police station should be suppresses as "fruit of the poisonous tree."  Obviously, suppression of his statements is not warranted.

the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 17th day of August, 2005.

      /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE